IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BONNIE F. KAITE, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 3:17-cv-00005 |
| | ) | |
| v. | ) | Honorable Kim R. Gibson |
| | ) | |
| ALTOONA STUDENT | ) | |
| TRANSPORTATION, INC. | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS**

Defendant, Altoona Student Transportation, Inc., by and through its undersigned counsel, files the following Memorandum of Law in Support of its Renewed Motion for Judgment on the Pleadings.[1]

This case involves amendments to the Commonwealth of Pennsylvania's Child Protective Services Law. The amendments to this law required – for the first time – that all "school employees" who have "direct contact with children" in Pennsylvania must submit to a criminal background check. One of the mandatory steps in this criminal background check involves submitting to fingerprinting. It is undisputed in this matter that Plaintiff informed Defendant that she had religious objections to the fingerprinting requirement of the criminal background check. Plaintiff requested several accommodations based on her religious objections. However, Plaintiff's requested accommodations required Defendant to violate the Child Protective Services Law, putting Defendant at risk of civil and criminal sanctions.

---

[1]    Defendant files this Renewed Motion for Judgment on the Pleadings to address Plaintiff's Amended Complaint, which added a claim under the Pennsylvania Human Relations Act. (ECF No. 14).

It is well-established that employers are not required to provide employees with accommodations that violate state or federal law.  Since Plaintiff's requested accommodations were in violation of state law, and Plaintiff's religiously-based restrictions could not otherwise be accommodated under the Child Protective Services Law, Plaintiff cannot set forth a claim against Defendant under Title VII of the Civil Rights Act of 1964 or the Pennsylvania Human Relations Act for failure to accommodate Plaintiff's religious beliefs or for retaliation.  As such, Defendant respectfully requests that this Court dismiss Plaintiff's Complaint based on the pleadings, with prejudice.

## I.    FACTUAL BACKGROUND

Defendant is a school bus transportation company located in Altoona, Pennsylvania. ECF No. 14 at ¶ 4.  In August 2001, Defendant hired Plaintiff as a school bus driver for the Altoona School District.  ECF No. 16 at ¶ 7.  Effective December 31, 2015, Plaintiff – as a school employee with "direct contact with children" – was required to pass a criminal background check pursuant to the Pennsylvania Child Protective Services Law, which required Plaintiff to submit to fingerprinting.  ECF No. 14 at ¶ 8; ECF No. 16 at ¶ 8.

Plaintiff notified Defendant that fingerprinting violates her Christian religious belief and requested an accommodation.  ECF No. 14 at ¶ 9.  Plaintiff's requested accommodations included, among others, a request for a different form of background check that did not involve fingerprinting.  ECF No. 14 at ¶ 9; ECF No. 16 at ¶ 9.  In support of her request, Plaintiff stated that she believes that the Book of Revelations prohibits the "mark of the devil," and that submitting to fingerprinting will prohibit her from getting into Heaven.  ECF No. 14 at ¶ 10.

Upon receiving Plaintiff's request for accommodation, Defendant attempted to work with Plaintiff, as well as the Altoona School District, a local lawmaker, legal counsel for the

Pennsylvania Department of Education, and, indirectly, with the Federal Bureau of Investigation to determine an accommodation for Plaintiff's religious beliefs that would comply with the Child Protective Services Law.  ECF No. 16 at ¶ 9.  After investigating each of Plaintiff's requested accommodations – including Plaintiff's request for an alternative background check – Defendant determined, in good faith, and with direct guidance and instruction from those responsible for enforcing the Child Protective Service Law, that each of Plaintiff's requested accommodations did not comply with the Child Protective Services Law.  ECF No. 16 at ¶ 9.

Without any legal accommodation available to Plaintiff, Defendant was left with no other choice but to administratively suspend Plaintiff on December 31, 2015.  ECF No. 16 at ¶ 11.

## II.   ARGUMENT

Federal Rule of Civil Procedures 12(c) provides that "after the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings."  The standard applied to motion for judgment on the pleadings is not materially different from the standard applied to a motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6).  *Pa. General Energy Co., LLC v. Grant Twp.*, 139 F. Supp.3d 706, 711 (W.D. Pa. 2015) (citing *Zion v. Nassan*, 283 F.R.D. 247, 254 (W.D. Pa. 2012)).  Either motion may be used to seek the dismissal of a complaint based on the plaintiff's failure to state a claim upon which relief can be granted.  *Id.*  The only difference between the two motions is the time of filing – motions to dismiss are filed before a responsive pleading is filed, whereas motions for judgment on the pleading are filed after the pleadings are closed.  *Id.*

The U.S. Supreme Court has articulated the now well-known standard for considering motions to dismiss in their seminal cases *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Pursuant to these cases, a complaint must be

dismissed if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. The Third Circuit has set forth a two part-analysis for reviewing motions to dismiss in light of *Twombly* and *Iqbal*, the same standard that should be applied to determining motions for judgment on the pleadings. First, the factual and legal elements of a claim should be separated. A district court must accept all of the complaint's well-pleaded facts as true, but should disregard any legal conclusions. Second, a district court must determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009).

In other words, "a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." *Id*. at 211 (citing *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234–35 (3d Cir. 2008)). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

Recognizing that this Motion is made pursuant to Federal Rule of Civil Procedure 12(c), in making this analysis, the Court should consider not only the Complaint, but also the Answer, and all exhibits attached to the pleadings. *Pa. General Energy Co., LLC*, 139 F. Supp.3d at 711-712 (citations omitted).

A.      **The Pennsylvania Child Protective Services Act.**

In 2014, the Commonwealth of Pennsylvania amended its Child Protective Services Law to, *inter alia*, require extensive background checking requirements for "school employees."

23 Pa. C.S. § 6344, *et seq.*[2]   The newly amended law defined "school employee" as "an individual who is employed by a school <u>or</u> who provides a program, activity, or service sponsored by a school.  The term does not apply to administrative or other support personnel <u>unless</u> the administrative or other support personnel has direct contact with children." 23 Pa. C.S. § 6303 (a) (emphasis added).  In turn, the law defined "direct contact with children" as "the care, supervision, guidance or control of children, or routine interaction with children," without providing further definition of these terms.  *Id.*

Individuals who met the definition of "school employee" were required to submit the following information to their employers:

(1)   A report of criminal history information from the Pennsylvania State Police or a statement from the Pennsylvania State Police that the State Police central repository contains no such information relating to that person.

(2)   A certification from the Department of Health Services as to whether the applicant is named in the Statewide database as the alleged perpetrator in a pending child abuse investigation or as the perpetrator of a founded report or an indicated report.

(3)   A report of Federal criminal history record information.

23 Pa.C.S. § 6344 (b) (emphasis added).   To obtain the federal criminal history record information, the school employee was required to submit a full set of fingerprints to the Pennsylvania State Police, who would then submit the fingerprints to the Federal Bureau of Investigation for the purpose of verifying the identity of the individual and obtaining a current record of any criminal arrests and convictions.   *Id.* at (b)(3).  These background checking requirements became effective December 31, 2014 for newly hired school employees, and December 31, 2015 for school employees who currently did not have a certification or who were

---

[2]   All applicable provisions of the Child Protective Services Law in effect in December 2015 are incorporated into the pleadings at ECF No. 16-1.

not previously required to submit to background checking requirements.  *Id.* (relating to newly

hired employees); 23  Pa.C.S. § 6344.4 (1)(iv) (relating to all other school employees).

Employers  are  mandated  to  require  school  employees  to  submit  the  required

documentation  and  certifications  for  their  background  checks.    23  Pa.C.S. § 6344(b.2).

Employers who fail to do so commit a third-degree misdemeanor.  *Id.*  Further, an individual

employed by the employer who is responsible for making employment decisions and:

> who willfully fails to comply with the provisions of section 6344 (relating to employees
> having direct contact with children…) commits a violation of this chapter and shall be
> subject to a civil penalty as provided in this subsection. The department shall have
> jurisdiction to determine violations of section 6344 and may, following a hearing, assess
> a civil penalty not to exceed $2,500. The civil penalty shall be payable to the
> Commonwealth.

23 Pa.C.S. § 6349 (c).  As a result, both criminal and civil penalties attach for violations of the

Child Protective Services Law.[3]

### B.    Employers Have No Obligation to Provide Accommodations that Violate State or Federal Laws.

Title  VII  provides  that  it  is  an  unlawful  employment  practice  for  an  employer  to

discriminate against an individual with respect to conditions of employment because of their

religion.  42 U.S.C. § 2000e-2(a).[4]  The term "religion" includes "includes all aspects of religious

observance  and  practice,  as  well  as  belief,  unless  an  employer  demonstrates  that  [they  are]

---

[3]    Notably, there is no indication – either from the Commonwealth or the legislature – that
such penalties would not result from a willful violation of the Child Protective Service
Law.

[4]    Pennsylvania  courts  generally  interpret  the  Pennsylvania  Human  Relations  Act  in
accordance with its federal counterparts.  *Prise v. Alderwoods Grp., Inc.*, 657 F. Supp. 2d
564, 586 (W.D. Pa. 2009) (*citing Kelly v. Drexel Univ.*, 94 F.3d 102, 105 (3d Cir. 1996);
*Stultz v. Reese Bros, Inc.*, 835 A.2d 754, 759 (Pa. Super. Ct. 2003)).  As such, Plaintiff's
claims for religious discrimination and accommodation under the PHRA should be
interpreted under the same standard as applied to Title VII religious discrimination and
accommodation claims.  *Prise*, 657 F. Supp. 2d at 586.  *See, also Wilkerson v. New
Media Tech. Charter Sch., Inc.*, 522 F.3d 315, 319 (W.D. Pa. 2008).

unable to reasonably accommodate an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business." 42 U.S.C. § 2000e(j).[5]

To establish a claim for religious discrimination, Plaintiff must establish that: (1) she held a bona fide or sincere religious belief that conflicted with an employment requirement; (2) she informed Defendant of this belief; and (3) she suffered an adverse employment action for failing to comply with the conflicting employment requirement. *Shelton v. Univ. of Med. & Dentistry of N.J.*, 223 F.3d 220, 224 (3d Cir. 2000).

Plaintiff is unable to satisfy this *prima facie* burden. Plaintiff cannot establish that she held a "religious" belief protected by Title VII. As the Third Circuit has noted, the definition of religion under Title VII includes a consideration of whether an employer is able to accommodate the religious belief without undue hardship. Therefore, "… if an employer cannot accommodate religious practice without undue hardship, the practice is not 'religion' under Title VII." *U.S. v. Bd. of Educ. for the Sch. Dist. of Philadelphia*, 911 F.2d 882, 886 (3d Cir. 1990). As discussed below, Defendant was unable to accommodate Plaintiff's purported religious beliefs without being subjected to undue hardship. Defendant's inability to accommodate Plaintiff's religious belief takes Plaintiff's religion outside of the protections of Title VII.

Further, Plaintiff's *prima facie* case fails because Plaintiff did not fail to comply with an "employment requirement" that conflicted with her purported religious belief, but a requirement of Pennsylvania law. *See Yisrael v. Per Scholas, Inc.*, No. 01 Civ. 8290 (DAB), 2004 U.S. Dist. LEXIS 5807, *9 (S.D.N.Y. Apr. 7, 2004) (citing *Sutton v. Providence St. Joseph Med. Ctr.*, 192

---

[5]     The term "religious creed" is not defined in the PHRA.  *See* 43 P.S. § 954.  As such, courts have applied the Title VII definition of "religion" to this term.  *Prise*, 657 F. Supp. 2d at 586.

F.3d 826 (9th Cir. 1999); *Seaworth v. Pearson*, 203 F.3d 1056 (8th Cir. 2000), *cert denied*, 531 U.S. 895 (2000); *Baltgalvis v. Newport News Shipbuilding Inc.*, 132 F. Supp. 2d 414 (E.D. Va. 2001), *aff'd*, 15 F. App'x 172 (4th Cir. 2001); *EEOC v. Allendale Nursing Centre*, 996 F. Supp. 712 (W.D. Mich. 1998)) ("The Internal Revenue Service, not the employer, imposes the requirement that an employee provide a Social Security number (SNN) for tax withholding purposes . . . Therefore, an employee's religious belief against using his SSN conflicts not with an employment requirement, but with federal law.  As a result, federal courts that have addressed this precise issue have agreed that an employee is not able to establish a *prima facie* case of religious discrimination based in an employer's insistence that the employee provide a SSN for tax withholding purposes[,]").[6]  As a result, Plaintiff's *prima facie* case fails as a matter of law.

Even if Plaintiff is able to satisfy the *prima facie* case, Plaintiff still cannot set forth a Title VII claim based on religious accommodation.  Even assuming, *arguendo*, that Plaintiff is able to satisfy her *prima facie* burden – which Defendant maintains she cannot – the burden shifts to Defendant to show "either it made a good-faith effort to reasonably accommodate the religious belief, or such an accommodation would work an undue hardship for the employer and its business." *Webb v. City of Phila.*, 562 F.3d 256, 259 (3d Cir. 2009).[7]

---

[6]     It is Defendant's position that there is no discernible difference between the line of religious discrimination cases addressing the use of Social Security numbers and the fingerprinting requirement at issue in this case.  Under both circumstances, employers are mandated by binding state or federal law and regulation to submit information to the government for governmental review and oversight.

It is within the case of Social Security numbers, it is not within an individual employer's authority to waive application of a legal requirement to a particular employee on any basis, without direct approval by the government.  Despite repeated requests for an accommodation for Plaintiff, the Commonwealth refused, as discussed below.

[7]     The Third Circuit has not yet ruled whether religious discrimination cases of this kind should be considered under a *prima facie* analysis or an undue hardship analysis.  Despite

An accommodation would constitute an undue hardship on an employer if it would present more than a *de minimus* cost to the employer. *Webb*, 562 F.3d at 259 (citing *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 84 (1977)). In making this determination, courts consider both economic and non-economic costs on the employer. *Webb*, 562 F.3d at 260. Non-economic costs include the threat of possible criminal sanctions. *Id.* at 891 (citing *U.S. v. Bd. of Educ. for the Sch. Dist. of Philadelphia*, 911 F.2d 882 (3d Cir. 1990)). Some courts have also considered the effect a requested accommodation might have on the business's reputation. *See EEOC v. Sambo's of Georgia, Inc.*, 530 F. Supp. 86, 90 (N.D. Ga 1981). Both this Court and its sister courts have routinely held that where an employee's requested accommodation conflicts with a requirement imposed by state or federal law, an employee's Title VII religious discrimination claim fails as an undue hardship.[8]

---

the circuit split that currently exists on this issue, Defendant does not believe that a determination is necessary in this case, as Plaintiff's claim is defeated under either analysis.

[8] *See, e.g., Yeager v. FirstEnergy Generation Corp.*, 777 F.3d 362, 363 (6th Cir. 2015) (noting that there is nothing in Title VII's text that "might license an employer to disregard other federal statutes in the name of reasonably accommodating an employee's religious practitioners); *Tagore v. United States*, 735 F.3d 324, 329 (5th Cir. 2013) (in considering an IRS employee's request to wear a religiously symbolic knife in a federal office building, the court held that since "the IRS is not authorized to determine security requirements of federal buildings, it cannot be deemed legally responsible for discriminating against [the employee]. Requiring IRS to override the DHS/FPS would place the revenue agency in the positon of violating federal law concerning the introduction of 'dangerous weapons' into federal buildings. An employer need not accommodate an employee's religious practice by violating other laws."); *Seaworth v. Pearson*, 203 F.3d 1056, 1057 (8th Cir. 2000) ("Requiring defendants to violate the Internal Revenue Code and subject themselves to potential penalties by not providing Seaworth's SSN on information returns results in undue hardship," citing penalties for failure to provide SSN); *Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 830 (9th Cir. 1999) ("Although they have disagreed on the rationale, courts agree that an employer is not liable under Title VII when accommodating an employee's religious beliefs would require the employer to violate federal or state law."); *Weber v. Leaseway Dedicated Logistics, Inc.*, No. 98-3172, 1999 U.S. App. LEXIS 220, *5-6 (10th Cir.

Plaintiff's case is factually similar to the *U.S. v. Board of Education* case. Alima Delores Reardon was a devout Muslim woman who believed that Muslim women should cover their entire bodies, except their face and hands, when in public. *U.S. v. Board of Education,* 911 F. 3d at 884. Reardon worked as a substitute teacher, and was informed by several school principals that, pursuant to the Pennsylvania Garb Statute, 24 Pa. Cons. Stat. Ann. § 11-1112, she was not permitted to wear religious clothing while teaching. *Id.* at 885. The Board of Education argued that Reardon's requested accommodation – allowing her to teach in her religiously-mandated clothing – could not be accomplished without undue hardship. *Id.* at 887. The Board of Education argued that it had no choice but to comply with the Garb Statute, and that failing to do so would have been an under hardship as it went about the business of running a school district. *Id.* at 890-91. The Third Circuit agreed, stating that "it would be an undue hardship to require [the Board of Education] to violate an apparently valid criminal statute, thereby exposing its administrators to criminal prosecution and the possible consequences thereof." *Id.* at 891.

### C.   Plaintiff's Requested Accommodation Violates the Pennsylvania Child Protective Services Act.

As a school bus driver, Plaintiff's employment undisputedly fell under the ambit of the Child Protective Services Law. Plaintiff provided a service to a school – the Altoona School

---

Jan. 7, 1999) ("To require an employer to subject itself to potential fines also results in undue hardship."); *Bhatia v. Chevron U.S.A., Inc.*, 734 F.2d 1382, 1384 (9th Cir. 1984) ("An employer may prove that an employee's proposal would involve undue hardship by showing that either its impact on coworkers or its cost would be more than *de minimis*."); *Baltgalvis v. Newport News Shipbuilding Inc.*, 132 F. Supp. 2d 414,419 (E.D. Va. 2001), *aff'd*, 15 F. App'x 172 (4th Cir. 2001) ("Courts have consistently agreed that an employer is not liable under Title VII when accommodating an employee's religious beliefs would require the employer to violate state or federal law."); *Hill v. Promise Hosp. of Phoenix, Inc.*, No. 09-cv-1958-PHX-JAT, 2010 U.S. Dist. LEXIS 68884, *21 (D. Ariz. July 8, 2010) ("By requiring the [employer] to accommodate the employee by waiving the mandatory provision of social security number, the [employer] would violate federal and state laws. . . . As such, it would cause 'undue hardship' as a matter of law.").

District – that required her to have direct contact with children.[9]   As such, effective December 31, 2015, Defendant was mandated to require Plaintiff to submit the requisite documentation and certifications, including fingerprint records.  Failure to do so would place Defendant in direct violation of the Child Protective Services Law – and, therefore, subject both Defendant and certain of its employees to criminal and civil sanctions. [10]

Although Plaintiff's Complaint only focuses on her request to be provided an alternative method of background checking, Plaintiff actually requested three potential accommodations. Namely, Plaintiff requested (1) an alternative method of background checking; (2) a waiver of the background checking requirement because Plaintiff's bus was equipped with a camera; or (3) a waiver of the background checking requirement and allowing Plaintiff to drive with another individual who had cleared the background checking requirements.  Notably, each of these requested accommodations is not truly an accommodation, but an attempt to obviate and avoid the requirements of the Child Protective Services Law.[11]

---

[9]   Plaintiff does not appear to dispute that she was a "school employee" with "direct contact with children."   ECF No. 14 at ¶ 8.  Instead, Plaintiff's sole dispute appears to be with whether an accommodation was available for her religious belief.

[10]   Notably, any failure by Defendant's to require Plaintiff to submit to the background checking requirements of the Child Protective Service Law would also place their client – the Altoona School District – in violation of the Child Protective Service Law, and therefore liable for criminal and civil penalties.

[11]   *See, generally Cherry v. Sunoco, Inc.*, 2009 U.S. Dist. LEXIS 72755 (E.D. Pa. Aug. 17, 2009).   Cherry, a member of the Church of the True and Living God, objected on religious grounds to posing for pictures and to having his picture taken.  *Id.* at *3. Cherry's beliefs conflicted with the federal Maritime Transportation Safety Act, which required Cherry to carry a photo ID.  *Id.* at *6.  In deciding whether Sunoco would be subject to undue hardship for accommodating Cherry's religious beliefs, the court considered Cherry's proposed accommodations, including (1) having a supervisor verify his identity; (2) showing his non-photo driver's license in conjunction with a non-photo employee ID; (3) being escorted to his work location; and (4) using biometric identification.  The court noted that these requests – in addition to not being reasonable

Nevertheless, rather than relying only on the face of the statute, Defendant diligently reviewed each of these requested accommodations.  As discussed above, as part of its investigation, Defendant contacted the Altoona School District, a local Pennsylvania lawmaker, and the Pennsylvania Department of Education – who in turn contacted the Federal Bureau of Investigation – for guidance and a possible exemption.

After a diligent and good faith attempt to accommodate Plaintiff, Defendant determined that it could not offer Plaintiff any of her requested accommodations, nor were any other accommodations available.  There were no provisions of the Child Protective Service Law that allowed for alternative background checking, nor were there any provisions that addressed electronic or in-person surveillance.[12]  Further, the Commonwealth was unwilling to provide Plaintiff with an exemption to the background checking requirements on the basis of her religious beliefs.[13]

---

under a Title VII analysis – were also methods of circumventing the photo ID requirement and sought to "obviate the need for Plaintiff to pose for and carry a photo ID." *Id.* at *25.  The court noted, however, that Sunoco "could not accept any of these suggested accommodations without violating" the Maritime Transportation Safety Act and its regulations.  *Id.  See also Sambo's of Ga., Inc.*, 530 F. Supp. at 90 (noting that plaintiff's requests for accommodation were in fact "not a demand for an accommodation but a demand for outright exemption.").

[12]     Under the current version of the Child Protective Services Law, this remains the case.

[13]     To the extent Plaintiff's Complaint seeks to set forth a disparate treatment claim, this claim would also fail.  In order to prove religious discrimination through disparate treatment, Plaintiff must show that (1) she is a member of a protected class; (2) she suffered an adverse employment action; and (3) nonmembers of the protected class received more favorable treatment.  *Abramson v. William Paterson College*, 260 F.3d 265, 281-82 (3d Cir. 2001).

As an initial matter, Defendant did not have the authority or discretion to provide any employee – including Plaintiff – with an exemption to the background checking requirements of the Child Protective Services Law.  Such authority and discretion was solely held by the Commonwealth and the Federal Bureau of Investigation.  Additionally,

Because the Commonwealth was unwilling to offer Plaintiff an exemption to the background checking requirements, Defendant was without any choice but to administratively suspend Plaintiff, pending cooperation with the background checking requirements.  To do otherwise would cause an undue hardship on Defendant and its business.

### D.      Plaintiff's Retaliation Claim Fails as a Matter of Law.

To state a claim for retaliation under Title VII, Plaintiff has the burden of establishing a prima facie case of retaliation under Title VII by showing that: "(1) she engaged in activity protected by Title VII; (2) [Defendant] took an adverse employment action against her; and (3) there was a causal connection between her participation in the protected activity and the adverse employment action."  *Moore v. City of Phila.*, 461 F.3d 331, 340-41 (3d Cir. 2006).[14]  If the Plaintiff establishes this *prima facie* case of retaliation, the familiar *McDonnell Douglas* approach applies in which "the burden shifts to [Defendant] to advance a legitimate, non-retaliatory reason for its conduct and, if it does so, the plaintiff must be able to convince the factfinder both that [Defendant's] proffered explanation was false, and that retaliation was the real reason for the adverse employment action."  *Id.* at 342.

---

Plaintiff is not similarly-situated to Defendant's other employees who were provided alternative background checking methods.  These employees submitted to the fingerprinting requirements of the Child Protective Services Law, and were told that their fingerprints were not detectable after multiple failed attempts.  ECF No. 16, at ¶ 12. Once again, Defendant did not make the decision to provide an exemption to the fingerprinting requirement for these individuals.  Instead, Commonwealth and the Federal Bureau of Investigation provided this exemption.

[14]   Title VII's anti-retaliation provisions are interpreted coextensively with the PHRA's anti-retaliation provisions.  *See, generally Prise*, 657 F. Supp. 2d at 605 (citing *Marra v. Phila. Hous. Auth.*, 497 F.3d 286, 300 (3d Cir. 2007)).  As such, the analysis provided in this section under Title VII applies equally to Plaintiff's PHRA retaliation claim.

For the purposes of this Motion only, Defendant concedes that Plaintiff will likely satisfy her *prima facie* burden.[15]  Accordingly, the burden shifts to Defendant to articulate a legitimate, non-retaliatory reason for Plaintiff's administrative suspension.  As discussed throughout this Motion, Defendant administratively suspended Plaintiff in a good faith belief that accommodating her religious beliefs violated the Pennsylvania Child Protective Services Law. Defendant reached this good faith belief after consultation with the Altoona School District, a local lawmaker, legal counsel for the Pennsylvania Department of Education, and, indirectly, with the Federal Bureau of Investigation.  As such, Defendant has satisfied its burden to establish a legitimate, non-retaliatory reason for its actions.

The burden would then shift to Plaintiff to convince the fact-finder that this proffered reason is pretext for discrimination.  Based on Plaintiff's Complaint, it does not appear that Plaintiff contests that this reason was pretext for discrimination.  ECF No. 14 at ¶ 8.  ("In November 2015, Defendant informed Kaite that pursuant to a recently enacted state law, she was to undergo a criminal background check, which included her being fingerprinted."); *Id.* at ¶ 10. ("Despite Kaite's request for accommodation for her religious beliefs, Defendant informed her on or around December 30, 2015 that no accommodations were available and that due to her failure to comply with the fingerprinting requirement she was terminated effective December 31, 2015.").[16]  Accordingly, Plaintiff cannot support a retaliation case based on Defendant's refusal to provide her with an accommodation that would require Defendant to violate state law.

---

[15]    Defendant, however, reserves the right to dispute these elements later in this litigation, if necessary.

[16]    Defendant clarifies that Plaintiff was not terminated – but administratively suspended, as discussed above.

III.     CONCLUSION

WHEREFORE, Defendant, Altoona Student Transportation, Inc., requests that its Motion for Judgment on the Pleadings be granted and that it be dismissed from this matter with prejudice.

Dated: April 17, 2017                                              Respectfully submitted,

JACKSON LEWIS P.C.


*s/Douglas G. Smith*
Douglas G. Smith
PA ID No. 56834
SmithD@jacksonlewis.com
Mariah H. McGrogan
PA ID No. 318488
Mariah.McGrogan@jacksonlewis.com
1001 Liberty Avenue, Suite 1000
Pittsburgh, PA  15222
412-232-0404
412-232-3441 facsimile

*Counsel for Defendant*