**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| BONNIE F. KAITE, | Civil Action |
| Plaintiff, | No. 17-005 |
| v. | Judge Gibson |
| ALTOONA STUDENT TRANSPORTATION, INC., | |
| Defendant. | JURY TRIAL DEMANDED |

**PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S RENEWED
MOTION FOR JUDGMENT ON THE PLEADINGS**

Plaintiff, Bonnie F. Kaite, by undersigned counsel, submits the following Brief in Opposition to Defendant's Renewed Motion for Judgment on the Pleadings.

## I. Introduction and Factual Background

Plaintiff Bonnie F. Kaite worked as a bus driver for Defendant Altoona Student Transportation, Inc. from 2001 until December 31, 2015. (Amd. Comp. ¶7). In November 2015, Defendant informed Kaite that due to amendments to the Pennsylvania Child Protective Services Law, 23 Pa. C.S. § 6344, she was required to undergo a criminal background check, which included her being fingerprinted. (Amd. Comp. ¶8).

Kaite, however, told Defendant it violates her Christian religious beliefs to be fingerprinted and requested a religious accommodation by asking if she could undergo a different form of background check that did not involve fingerprinting. (Amd. Comp. ¶9). Kaite believes the Book of Revelation prohibits the "mark of the devil," which she believes includes fingerprinting, and that she will not get into Heaven if she submits to fingerprinting. (Amd. Comp. ¶10). Despite Kaite's request for an accommodation for her religious beliefs, Defendant

told her that no accommodations were available and that due to her failure to comply with the fingerprinting requirement she was suspended indefinitely, effective December 31, 2015. (Amd. Comp. ¶11)

Although, Defendant refused to accommodate Kaite's religious beliefs, there was at least one other employee of Defendant whose fingerprints were unreadable that was allowed to continue employment with Defendant after undergoing an alternate criminal background check that did not involve fingerprinting. (Amd. Comp. ¶12); (Amd. Answer ¶ 12). Defendant granted the accommodation to the employee whose fingerprints were unreadable even though the Child Protective Services Law does not provide any exemption for these types of employees. (Amd. Comp. ¶12); (Amd. Answer ¶12).

## II. Argument

### A. Because Defendant Permitted Employees Whose Fingerprints Were Not Readable to Avoid the Requirements of Section 6344, but Required Kaite to Comply with the Statute, it Discriminated Against Her Because of Her Religion.

Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e(j), defines religion to include both religious practices as well as religious beliefs. *E.E.O.C. v. Abercrombie & Fitch Stores, Inc.*, 135 S. Ct. 2028, 2033–34 (2015). By including religious *practices* under the definition of religion, Congress intended "to make it an unlawful employment practice under § 703(a)(1) for an employer not to make reasonable accommodations, short of undue hardship for the religious practices of his employees and prospective employees." *E.E.O.C. v. Townley Eng'g & Mfg. Co.*, 859 F.2d 610, 613–14 (9th Cir. 1988).

The religious "accommodation issue, by definition, arises only when a *neutral rule* of general applicability conflicts with the religious practices of a particular employee." *Trans*

*World Airlines, Inc. v. Hardison*, 432 U.S. 63, 87–88 (1977) (Marshall, J., dissenting); *see also,* *Drazewski v. Waukegan Dev. Ctr.*, 651 F.Supp. 754, 759 (N.D. Ill. 1986) (same).  "Title VII requires otherwise-neutral policies to give way to the need for an accommodation." *Abercrombie & Fitch Stores*, *Inc.,* 135 S. Ct. at 2034; *see also*, *Matthews v. Wal-Mart Stores, Inc.*, 417 Fed.Appx. 552, 554 (7th Cir. 2011) (noting that religious accommodation issues arise where an employee requests an accommodation for a *neutral* workplace rule); *Summers v. Whitis*,  2016 WL 7242483, at *5 (S.D. Ind. Dec. 15, 2016) (Employers are required to accommodate an employee when a *neutral* rule of general applicability conflicts with the religious practices of a particular employee).  Therefore, when a workplace rule is not neutral with respect to religious practices or beliefs, the issue is not one of religious accommodation, but rather, plain religious discrimination in which the employer is discriminating against the employee with respect to the terms and conditions of her employment because of her religion. 42 U.S.C. § 2000e-2.

### 1.     Here, Defendant's workplace requirement that all bus drivers submit fingerprints is not neutral.

Because Defendant permitted employees whose fingerprints were not readable to avoid the fingerprinting requirement, its policy was not neutral and, thus, Kaite was discriminated against on the basis of her religion.  It is undisputed Section 2344 of the Child Protective Services Law mandates bus drivers submit to fingerprinting.  23 Pa. C.S. §2344(b)(3), 23 Pa. C.S. §2344(a.1).  Kaite sought an accommodation from the fingerprinting requirement due to her religious beliefs.  At least one other employee who worked for Defendant also sought an accommodation, due to unreadable fingerprints, and was permitted to submit to an alternative form of background check that did not involve fingerprinting.  (Amd. Comp. ¶ 12); (Amd.

Answer ¶ 12).  Section 2344 does not contain any exemptions for employees whose fingerprints are unreadable.  23 Pa. C.S. §2344(b)(3).

Because Defendant exempted the employee whose fingerprints were unreadable from its fingerprinting policy, but did not exempt Kaite, its workplace rule is not neutral.  Defendant chose to exempt the employees whose fingerprints were unreadable from the fingerprinting requirement even though the statute makes no exception for these types of individuals.  In effect, by permitting the individuals whose fingerprints were unreadable from avoiding the consequences of the fingerprinting rule, but still requiring Kaite to comply with the rule, Defendant discriminated against Kaite's regarding the terms and conditions of her employment because of her religion, in violation of Title VII.  42 U.S.C. § 2000e-2.  Based on Defendant's decision to grant employees other than Kaite exemptions from the fingerprinting requirement, Kaite's claim of religious discrimination is plausible on its face, and Defendant's Motion should be denied.

     **B.**    **Because Section 6344 of the Child Protective Services Requires an Employment Practice That Violates Title VII, Defendant May Not Rely on the Statute to Argue that Accommodating Kaite Constitutes Undue Hardship.**

Section 2000e-7 of Title VII provides that:

> Nothing in this subchapter shall be deemed to exempt or relieve any person from any liability, duty, penalty, or punishment provided by any present or future law of any State or political subdivision of a State, other than any such law which purports to require or permit the doing of any act which would be an unlawful employment practice under this subchapter.[1]

---

[1] See also, 42 U.S.C. § 2000h-4, providing that:

Nothing contained in any title of this Act shall be construed as indicating an intent on the part of Congress to occupy the field in which any such title operates to the exclusion of State laws on the same subject matter, nor shall any provision of this Act be construed as invalidating any provision of State law unless

(continued...)

4

42 U.S.C.A. § 2000e-7.  This statute "make[s] it clear that Congress, by passage of [Title VII], intended to supersede all provisions of State law which require or permit the doing of an act which constitutes an unlawful employment practice under Title VII . . . or which are inconsistent with any of the purposes of the Civil Rights Act of 1964." *Ridinger v. General Motors Corp.*, 325 F.Supp. 1089, 1094 (S.D. Ohio 1971) (Because Ohio statute restricted female employment in workshops and factories, it conflicted with Title VII and was void), *reversed on other grounds,* 474 F.2d 949 (6th Cir. 1972); *Rinehart v. Westinghouse Electric Corp.,* C 70-537, 1971 WL 174, at *1 (N.D. Ohio Aug. 20, 1971).

Under Section 2000e-7 as well as the Supremacy Clause of Article VI, cl. 2 of the United States Constitution, "in the event of a conflict between State and Federal legislation, the Federal legislation will prevail." *Kober v. Westinghouse Electric Corp.*, 325 F.Supp. 467, 474 (W.D. Pa. 1971) (Despite Pennsylvania statute restricting number of hours women could work, Employer violated Title VII when it did  not hire women, even though to do so would violate statute), *affirmed*, 480 F.2d 240 (3d Cir. 1973).  Thus, Title VII relieves employers of state statutory requirements "which purport to require or permit any discriminatory practice." *Smith v. City of Boston*, 144 F. Supp. 3d 177, 210 (D. Mass. 2015).

Because Title VII preempts any state laws in conflict with it, an employer cannot assert the requirements of state law as a defense to Title VII liability.  *Gulino v. New York State Educ. Dep't*, 460 F.3d 361, 380 (2d Cir. 2006); *see also*, *Williams v. General Foods Corp.*, 492 F.2d 399, 404 (7th Cir. 1974) (Employer's reliance on a state statute in violation of Title VII does not

---

[1](...continued)

        such provision is inconsistent with any of the purposes of this Act, or any provision thereof.
*Id.*

absolve employer of liability for unlawful employment practices); *Gulino v. Bd. of Educ. of City Sch. Dist. of City of New York*, 907 F.Supp.2d 492, 508, 511–12 (S.D. N.Y. 2012) (same); *Brown v. City of Chicago*, 8 F. Supp.2d 1095, 1112–13 (N.D. Ill. 1998), *aff'd sub nom.*, *Bryant v. City of Chicago*, 200 F.3d 1092 (7th Cir. 2000) (same); *Stryker v. Register Public Co.*, 423 F. Supp. 476, 479-480 (D. Conn. 1976)   (employer's reliance on statute violating Title VII did not immunize it from liability for backpay).  If an employer commits a discriminatory employment practice, it still violates Title VII even if a state statute permitted or required the practice.  *Kober*, 325 F. Supp. at 474.  Thus, reliance on state laws in conflict with Title VII "is no defense to a charge that an employer's policies or practices violate Title VII."  626.12 Conflicting State Laws, Equal Employment Opportunity Commission Compliance Manual § 626.12.

> **1.    Because Section 2344 of the Child Protective Services Law, as applied, permits certain exemptions, but not religious exemptions, it violates Title VII.**

Here, Section 2344 of the Child Protective Services Law, as applied, violates Title VII. Accordingly, Defendant cannot assert its compliance with the statute as a defense to Title VII liability or to demonstrate undue hardship.

Section 2344 does not contain any exemptions from the school employee fingerprinting requirement. 23 Pa. C.S. § 6344. Defendant asserts, however, that it contacted the Commonwealth regarding its employee whose fingerprints were unreadable and that the Commonwealth permitted this employee to submit to a background check that did not involve fingerprinting.   (Amd. Answer ¶ 12); (Amd. Answer Ex. B, Luchette Affidavit ¶¶ 12-13). Because the Commonwealth was willing to permit an exception for one group of individuals, i.e. those individuals whose fingerprints are unreadable, but would not permit an exception for

religious beliefs, Section 6344 is not neutrally applied and discriminates against employee on the basis of their religion, in violation of Title VII.

Supreme Court and Third Circuit jurisprudence analyzing the constitutionality of state and local laws under the Free Exercise Clause are instructive with respect to whether Section 2344 of the Child Protective Services Law violates Title VII.  In general, under the Free Exercise Clause "a law that is neutral and of general applicability need not be justified by a compelling government interest even if the law has the incidental effect of burdening a particular religious practice."  *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 531 (1993) (citing *Employment Division of Human Resources of Oregon v. Smith*, 494 U.S. 872 (1990)). However, a law that does not satisfy neutrality and general applicability requirements regarding religious practices is subject to strict scrutiny.  *Id.*

"Facial neutrality is not determinative."  *Id.* at 534.  The Free Exercise Clause also "forbids subtle departures from neutrality," and "[o]fficial action that targets religious conduct for distinctive treatment cannot be shielded by mere compliance with the requirement of facial neutrality." *Id.*  Therefore, "in circumstances in which individualized exemptions from a general requirement are available, the government may not refuse to extend that system to cases of religious hardship without compelling reason."  *Id.* at 537 (citing *Smith*, 494 U.S. at 884).

In *Fraternal Order of Police Newark Lodge No. 12 v. City of Newark*, 170 F.3d 359 (3d Cir. 1999), an internal order of the Newark Police Department required  police officers to shave their beards.  *Id.* at 360.  Although the order ostensibly required all officers to shave their beards, in practice, the Department permitted an exemption for officers who received a "medical clearance" to wear a beard.  *Id.* at 360.  Two Muslim police officers sought an injunction against

the Police Department's "no beard" policy, arguing they were religiously obligated to grow beards and that requiring them to shave their beards violated their rights under the Free Exercise Clause of the First Amendment.  *Id.* at 360-61.

On appeal, the police officers argued that since the Department provided medical, but not religious, exemptions from the "no beard" policy, it had unconstitutionally devalued their religious reasons for wearing beards by judging them to be less important than medical reasons. *Id.* at 365.  The Department argued that its decision to make a distinction between medical exemptions and religious exemptions did not represent an impermissible value judgment because the medical exemptions were only made to comply with the ADA.  *Id.*  However, then-Judge Alito, writing for the majority, determined that because Title VII requires employers to accommodate religious beliefs, just as the ADA requires employers to accommodate disabilities, the Department was not justified in providing differential treatment between medical exemptions and religious exemptions.  *Id.*

The court explained that in *Smith* and *Lukumi*, the "Court's concern was the prospect of the government deciding that secular motivations are more important than religious motivations."  *Id.*  The court noted that "this concern is only further implicated when the government does not merely create a mechanism for individualized exemptions, but instead, *actually creates a categorical exemption for individuals with a secular objection, but not for individuals with a religious objection.*"  *Id.* (emphasis added).  The court determined that the medical exemption raised concerns because it indicated that the Department had "made a value judgment that secular (i.e. medical) motivations for wearing a beard [were] important enough to overcome its general interest in uniformity but that religious motivations [were] not."  *Id.* at 366.

Accordingly, the Court concluded that "the Departments' decision to provide medical exemptions while refusing religious exemptions [was] sufficiently suggestive of discriminatory intent so as to trigger heightened scrutiny." *Id.* at 365.

In *Blackhawk v. Pennsylvania*, 381 F.3d 202 (3d Cir. 2004), another decision written by then-Judge Alito, a Native American purchased two black bears to use in religious ceremonies. *Id.* at 205. A Pennsylvania Game Commission regulation required owners of exotic wildlife to obtain a possession permit and pay an annual fee, but exempted zoos and nationally recognized circuses from these requirements. *Id.* Additionally, the director of the Game Commission was authorized to waive the permit fee where hardship or extraordinary circumstances warranted, so long as the waiver was consistent with sound game or wildlife management activities. *Id.* The plaintiff sought an exemption from the annual permit fee on the ground that he possessed the bears for Native American religious purposes, but was denied a waiver because the Commission regarded keeping the bears in captivity as inconsistent with sound game or wildlife management activities. *Id.* Thereafter, the plaintiff filed an action under 42 U.S.C. § 1983 seeking to enjoin the Commission from collecting the fee. *Id.*

The Court noted that a "law is 'neutral' if it does not target religiously motivated conduct either on its face or as applied in practice." *Id.* at 209. However, it explained that

> a law fails the general applicability requirement if it burdens a category of religiously motivated conduct but exempts or does not reach a substantial category of conduct that is not religiously motivated and that undermines the purposes of the law to at least the same degree as the covered conduct that is religiously motivated.

*Id.* Such laws must satisfy strict scrutiny. *Id.* Similarly, "a law must satisfy strict scrutiny if it permits *individualized, discretionary exemptions because such a regime creates the opportunity*

*for a facially neutral and generally applicable standard to be applied in a practice that discriminates against religiously motivated conduct*." *Id.* (emphasis added).

The court determined that the fee requirement failed the general applicability requirement because the waiver mechanism exempted individuals with hardships, who would follow sound game and wildlife management polices, but not individuals who wanted to keep exotic animals for religious reasons. *Id.* at 210. According to the court, this selective waiver system created a "regime of individualized discretionary exemptions that trigger[ed] strict scrutiny." *Id.* Similarly, the categorical exemption for zoos and circuses also triggered strict scrutiny because such exemptions undermined the Game Commission's goal of discouraging the keeping of wild animals in captivity. *Id.* at 211. Upon review, the Court held the regulatory scheme did not satisfy strict scrutiny.[2] *Id.* at 214.

These cases interpreting the Free Exercise Clause are analogous to the Commonwealth's selective enforcement of Section 2344 of the Child Protective Services Law. Like *Fraternal Order of Police* or *Blackhawk* where the defendants granted exemptions from the laws at issue

---

[2] See also, *Tenafly Eruv Association, Inc. v. Borough of Tenafly*, 309 F.3d 144 (3d Cir. 2002). In that case, an Orthodox Jewish organization placed "eruvs" on utility poles throughout the Borough, to extend the area in which Orthodox Jews could partake in certain activities on the Sabbath. *Id.* at 152-154. Relying on a local ordinance that prohibited the placement of any sign or advertisement in any public place or public street, the Borough Council ordered the removal of the eruvs. *Id.* Although the ordinance prohibited all signs and advertisements on utility poles and did not permit any exceptions, in practice, the Borough permitted various signs on poles including directional signs to local churches, lost animal signs, house number signs, and holiday displays, such as wreaths and ribbons. *Id.* at 151. The plaintiff sought to enjoin the Borough from removing the eruvs. *Id.* at 154. The court noted that "in situations where government officials exercise discretion in applying a facially neutral law, so that whether they enforce the law depends on their evaluation of the reasons underlying a violator's conduct, they contravene the neutrality requirement if they exempt some secularly motivated conduct but not comparable religiously motivated conduct." *Id.* at 165-66. Accordingly, the Court held that the Borough's selective, discretionary application of the ordinance against the eruvs violated the neutrality principle established in *Lukumi* and *Fraternal Order of Police* because it "'devalues' Orthodox Jewish reasons for posting them on utility poles by judging them to be of lesser import than nonreligious reasons, and thus singles out the plaintiff's religiously motivated conduct for discriminatory treatment." *Id.* at 168. Thus, the court held that similar to the religious discrimination that occurred in *Fraternal Order of Police* "the Borough's invocation of the often-dormant Ordinance against conduct motivated by Orthodox Jewish beliefs [was] sufficiently suggestive of discriminatory intent" to trigger strict scrutiny. *Id.*

for some reasons, but not religious reasons, here, the Commonwealth exempts individuals whose fingerprints are not readable from the fingerprinting requirement, but does not exempt individuals who object to fingerprinting for religious reasons.  While it is unclear why certain individuals' fingerprints are unreadable, even if the Commonwealth grants these individuals exemptions based on a medical condition, the decision to exempt only these individuals from the Section 6344 requirements creates a regime of "individualized, discretionary exemptions" that results in an otherwise "facially neutral and generally applicable standard" being "*applied in a practice that discriminates against religiously motivated conduct*."  *Blackhawk*, 381 F.3d at 209. As the Third Circuit held in *Fraternal Order of Police*, it is of no import if an exemption is granted for medical reasons, because, where the defendant grants exemptions for medical reasons, but not religious reasons, it indicates the defendant has decided secular exemptions are more important than religious exemptions, which is discriminatory.  *Fraternal Order of Police* 170 F.3d at 365-66.

In *Fraternal Order of Police*, *Blackhawk*, and *Tenafly*, the Third Circuit held that the defendants' decisions to exempt "secular" but not religious exemptions from the law at issue was sufficiently suggestive of discriminatory intent to trigger strict scrutiny.  Similarly, here, because the Commonwealth has, in effect, made a "value judgment" that secular motivations for not submitting fingerprints are more important than religious motivations, Section 2344, as applied, discriminates against school employees who religiously object to fingerprinting.

Since Section 2344, as applied, discriminates against employees based on their religious beliefs, it is inconsistent with and violates Title VII.  Therefore, the statute is superseded by Title VII and void to the extent it discriminates against employees seeking religious accommodations

11

by not exempting them from the fingerprinting requirement, but exempting other employees from the requirement.  42 U.S.C. § 2000e-7; *Kober*, 325 F. Supp. at 474; *Ridinger*, 325 F.Supp. at 1094.  Because Title VII supersedes Section 2344, to the extent it permits some exemptions, but not religious exemptions, Defendant was relieved from the statutory fingerprinting requirements as they apply to Kaite.  *See Smith*, 144 F. Supp. 3d at 210.  Accordingly, Defendant cannot rely on Section 2344 as a defense to liability under Title VII or to argue that complying with the statute would constitute an undue hardship.  *Gulino*, 460 F.3d at 380.

2. **The cases relied upon by Defendant in support of its motion for judgment on the pleadings are distinguishable.**

a. *The case law in which the accommodation would violate a federal statute.*

Most of the cases Defendant cites involve federal statutes in conflict with the employees' requests for religious accommodation.  For example, in a number of those cases, the employees involved sought religious accommodations from the employers' requirements that employees provide them their social security numbers.  *See Yeager v. FirstEnergy Generation Corp.*, 777 F.3d 362, 362–64 (6th Cir. 2015); *Seaworth v. Pearson*, 203 F.3d 1056 (8th Cir. 2000); *Weber v. Leaseway Dedicated Logistics, Inc.*, 166 F.3d 1223 (10th Cir. 1999); *Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 830–31 (9th Cir. 1999); *Hill v. Promise Hosp. of Phoenix, Inc.*, 09-CV-1958-PHX-JAT, 2010 WL 2812913, at *7–8 (D. Ariz. July 8, 2010); *Yisrael  v. Per Scholas, Inc.*, No. 01 Civ. 8290 DAB, 2004  WL 744485 (S.D.N.Y. Apr. 7, 2004); *Baltgalvis v. Newport News Shipbuilding Inc.*, 132 F. Supp. 2d 414 (E.D. Va. 2001); *E.E.O.C. v. Alendale Nursing Centre*, 996 F. Supp. 712 (W.D. Mich. 1998).   Because accommodating those employees' religious beliefs would result in the employers violating *federal* social security and

tax regulations requiring they provide employees' social security numbers, the various courts held it constituted an undue hardship.  *Id.*  Similarly, in *Tagore v. United States*, 735 F.3d 324 (5th Cir. 2013), the Fifth Circuit held it would create an undue hardship to accommodate a Sikh IRS employee's request to wear a ceremonial knife to work because to do so would violate a *federal* law prohibiting dangerous weapons in federal facilities.  *Id.* at 326.  In *Cherry v. Sunoco, Inc.*, 07-CV-2235, 2009 WL 2518221, at *1 (E.D. Pa. Aug. 17, 2009), the district court held it would constitute an undue hardship to accommodate the employee's request to not have a photo ID because to do so would violate *federal* law.  *Id.* at *6.

Here, in contrast to the above-cited cases, accommodating Kaite would not require Defendant to violate a *federal* law.  Accommodating Kaite's religious beliefs would only require Defendant to contravene  a *state* statute.

Section 2000e-7 of Title VII does not mandate employers violate another federal statute that conflicts  with Title VII.  However, where,  as here, a state statute conflicts with Title VII, 42 U.S.C. § 2000e-7 compels an employer to disregard the state statute.  In the cases Defendant cites,  the courts held it would be an undue hardship for the employers to violate federal statute. Those cases are largely inapplicable to the present situation because Kaite seeks an accommodation from a state statute that violates Title VII, and 42 U.S.C. § 2000e-7 requires Defendant to ignore the state statute to comply with Title VII.

> **b.**     ***The case law in which the accommodation would violate a state or local law.***

Defendant also cites to several other cases in which the employers relied upon state laws in refusing to accommodate employees' religious beliefs.  In *U.S. v. Board of Education for School District of Philadelphia*, 911 F.2d 882 (3d Cir. 1990), a school teacher, who was a devout

Muslim, sought accommodation from the employer's prohibition against teachers wearing head scarves in school. *Id.* at 885. Because accommodating the teacher would violate a Pennsylvania criminal statute prohibiting teachers from wearing any sort of religious dress, marks, emblems, or insignia, the court held that it would be an undue hardship to accommodate the teachers. *Id.* at 891.

Similarly, in *Bhatia*, v. *Chevron U.S.A., Inc.*, 734 F.2d 1382 (9th Cir. 1984), a Sikh employee sought a reasonable accommodation from his employer's requirement that he shave any facial hair. *Id.* at 1383. The employer required employees to shave facial hair in order to comply with a California Occupational Safety and Health Administration standard requiring workers exposed to toxic gases to achieve a gas-tight face seal when wearing respirators. *Id.* Since accommodating the employee's facial hair request could prevent him from achieving a gas-tight face seal, and risk violating California's safety standards, the court held accommodating him would create an undue hardship.[3] *Id.* at 1384.

Unlike these cases where courts held that non-compliance with a state statute would constitute undue hardship, here, the state statute at issue itself is in violation of Title VII and, therefore, Defendant is not required to comply. The statutes at issue in *School Board of Philadelphia* and *Bhatia* did not contain exemptions for certain types of employees. Rather, those statutes required that ***all*** employees comply and were generally applicable and neutral with

---

[3]*But see, EEOC v. Union Independiente de la Autoridad de Acuedeutos y Aclatarillados de Puerto Rico (UIA)*, 30 F. Supp. 2d 217 (D. P.R. 1998), *reversed on other grounds*, 279 F.3d 49 (1st Cir. 2002) . In that case, an employee sought an exemption from the employer's rule requiring he join a labor union. *Id.* at 219. The employee sought a religious accommodation from the rule, arguing it violated his Seventh Day Adventist beliefs. *Id.* The union argued that allowing the employee to work without becoming a union member would violate a Puerto Rico statute authorizing unions to negotiate provisions in CBAs requiring employees to become union members. *Id.* at 223. Citing to 42 U.S.C. § 2000e-7, the court held that "[i]f state or local laws indeed provide less protection, they are superseded by Title VII to the extent of conflict with Title VII and thus, cannot serve as a basis for a claim of undue hardship." *Id.*

respect to all employees.

Conversely, here, Section 2344 of the Child Protective Services, as applied by the Commonwealth, permits an exception for those employees whose fingerprints are unreadable, but does not contain an exception for employees whose religious beliefs create the functional equivalent of an unavailable print.   By allowing employees with unreadable fingerprints to receive more preferential treatment than employees seeking religious accommodation, the statute is neither   generally applicable, nor neutral and, therefore, discriminates against religiously motivated conduct.  *See e.g.*, *Lukumi*, 508 U.S. at 531; *Fraternal Order of Police*, 170 F.3d at 365-66.  The difference in treatment under Section 6344 between employees who seek religious accommodation and employees whose fingerprints are unreadable makes this case distinguishable from *School Board of Philadelphia* and *Bhatia*.

For example, if in *School Board of Philadelphia*, the Pennsylvania Garb Statute had only been enforced against Muslims, but not against Jews or Catholics, then the statute would have been neither generally applicable nor neutral and, thus, discriminatory.  *See e.g. Tenafly*, 309 F.3d at 167-68 (Borough's decision to permit church directional signs and holiday displays on utility poles, but prohibit Jewish eruvs, singled out "the plaintiffs' religiously motivated conduct for discriminatory treatment.").  In that case, the Garb statute would have violated Title VII and the employer would have been compelled to ignore the state statutory requirement, pursuant to 42 U.S.C. § 2000e-7, and provide the employee an accommodation for his religious beliefs.  Similarly, if in *Bhatia*, the California safety regulations had only been enforced against Sikhs and other religious denominations, but not against individuals who received medical clearance for their beards, the regulations would not have been neutrally enforced and would be

15

discriminatory.  *See e.g.*, *Fraternal Order of Police*, 170 F.3d at 365-66 ("no beard" policy was discriminatory where exemption permitted for medical reasons, but not religious reasons). Likewise, in that situation the regulations would have violated Title VII and the employer would have been required to grant an accommodation despite the regulation.

Here, Section 2344 of the Child Protective Services Law is not neutrally applied to different types of employees.  Thus, Kaite's situation is different from the other cases involving state statutes.  Because employees whose fingerprints were physically unavailable could avoid the fingerprinting requirements of Section 2344, but employees whose fingerprints were spiritually unavailable because of religious objections could not avoid the requirements, the statute, as applied to Kaite, is discriminatory and violates Title VII.  Accordingly, Defendant was compelled to disregard Section 2344, pursuant to 42 U.S.C. § 2000e-7, and cannot assert its compliance with the statute as a defense to Title VII liability or to demonstrate undue hardship.

### C.    Because Genuine Issues of Material Fact Remain To Be Resolved, Judgment on the Pleadings is Inappropriate.

A motion for judgment on the pleadings based on the theory that the plaintiff failed to state a claim is reviewed under the same standards that apply to a motion to dismiss under Fed.R.Civ.P. 12(b)(6).  *Caprio v. Healthcare Revenue Recovery Grp., LLC*, 709 F.3d 142, 146–47 (3d Cir. 2013); *Lane v. Walsh*, 3:CV 14 830, 2015 WL 3866043, at *3 (M.D. Pa. June 23, 2015).  Under Rule 12(b)(6), courts must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."   *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir.2009).  In resolving the motion to dismiss, the court must "conduct a two-part analysis."  *Id.*   First, the court must separate the factual elements from the

16

legal elements, accepting all of the factual allegations as true, but disregarding any legal conclusions. *Id.* Second, the court must "determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id.* (citing *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009).

Under Fed.R.Civ.P. 12(c), judgment on the pleadings should "not be granted unless the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law." *Andela v. American Association for Cancer Research*, 389 Fed.Appx. 137, 140 (3d Cir. 2010); *DiCarlo v. St. Mary Hosp.*, 530 F.3d 255, 259 (3d Cir. 2008); *Barker v. Hostetter*, CIV.A. 13 5081, 2015 WL 1455703, at *3 (E.D. Pa. Mar. 31, 2015). When deciding a Rule 12(c) motion, the reviewing court should "view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party." *Estabrook v. Safety & Ecology Corp.*, 556 Fed.Appx. 152, 154 (3d Cir. 2014); *Barker*, 2015 WL 1455703, at *3; *Snyder v. Daugherty*, 899 F.Supp.2d 391, 401 (W.D. Pa. 2012).

In religious accommodation cases, the question of "whether an employer can reasonably accommodate a person's religious beliefs without undue hardship is basically a question of fact." *Jamil v. Sessions*, 2017 WL 913601, at *14 (E.D. N.Y. Mar. 6, 2017) (citing *Minkus v. Metro. Sanitary Dist. Of Greater Chicago*, 600 F.2d 80, 81 (7th Cir. 1979)); *Nichols v. Illinois Dep't of Transp.*, 152 F.Supp.3d 1106, 1123–24 (N.D. Ill. 2016). "The court's determination of what is reasonable in a particular case must be made in context of the unique facts and circumstances of the case," *Kaplan v. City of Chicago*, 2004 WL 2496462, at *11–12 (N.D. Ill. Nov. 4, 2004), which typically precludes disposition at the motion to dismiss stage.

### 1. Questions of fact remain regarding Kaite's religious discrimination claim.

Here, Kaite's claim for religious discrimination is clearly plausible on its face. "To establish a *prima facie* case of religious discrimination, the employee must show: (1) she holds a sincere religious belief that conflicts with a job requirement; (2) she informed her employer of the conflict; and (3) she was disciplined for failing to comply with the conflicting requirement." *Webb v. City of Philadelphia*, 562 F.3d 256, 259 (3d Cir. 2009). An employer is not required to accommodate the employee's religion if doing so would result in an undue hardship. *Shelton v. Univ. of Medicine & Dentistry of N.J.*, 223 F.3d 220, 224 (3d Cir. 2000).

Kaite's Complaint alleges she (1) had a sincere religious belief that Defendant's fingerprinting requirement was prohibited by the Book of Revelation; (2) informed Defendant of her religious conflict; and (3) was fired after Defendant was unwilling to accommodate her request to submit to an alternative form of background check. (Amd. Comp. ¶¶ 9-11). Accordingly, it should be beyond dispute that Kaite has sufficiently pled her *prima facie* case for religious discrimination.

Defendant argues that it was not required to accommodate Kaite's religious beliefs because to do so would violate Section 2344 of the Child Protective Services Law, which constitutes an undue hardship and, therefore, Kaite's claim fails as a matter of law. However, the facts alleged in the Complaint and the Answer establish material issues of fact that need to be resolved, which precludes granting Defendant's Motion. *Andela*, 389 Fed.Appx. at 140.

The Complaint alleges that at least one other employee, whose fingerprints were not readable, was permitted to continue employment with Defendant after undergoing an alternate background check that did not involve fingerprinting. (Amd. Comp. ¶ 12). The Answer admits

18

this allegation, and alleges that although the Commonwealth and FBI allowed the individuals whose fingerprints were unreadable to submit to alternative methods of background screening, it would not make an exception for Kaite.  (Amd. Answer ¶ 12).  This allegation itself  creates a material question of fact that militates against granting Defendant's Motion.  Through discovery, Kaite will need to determine why Defendant was able to grant the individuals whose fingerprints were unreadable an exemption from the fingerprinting policy, but was unwilling to do the same for Kaite.   Kaite will need to find out what conversations Defendant had with the Commonwealth and FBI regarding Kaite's request for accommodation and the individuals whose fingerprints were unreadable.   To discover this information, Kaite will likely need to conduct depositions of Defendant's decision-makers as well as the Commonwealth employees who discussed Kaite with Defendant.  Because there remain material questions of fact regarding whether accommodating Kaite would create undue hardship, Defendant's Motion is improper and should be denied.

### 2.     Questions of fact also remain regarding Kaite's retaliation claim.

Kaite's retaliation claim is also plausible on its face.  To establish a *prima facie* case of retaliation under Title VII, Kaite must simply tender evidence that: (1) she engaged in activity protected by Title VII; (2) Defendant took a materially adverse  action against her; and (3) there is a causal connection between her protected activity and the adverse employment action.  *Moore v. City of Philadelphia*, 461 F.3d 331, 341 (3d Cir. 2006); *see Fogleman v. Mercy Hosp., Inc.*, 283 F.3d 561, 567-68 (3d Cir. 2002); *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 278-79 (3d Cir. 2000).

If Kaite offers such evidence, the burden shifts to Defendant to advance a legitimate non-

retaliatory reason for its conduct. If it does, Kaite must "point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Hare v. Potter*, 220 Fed.Appx. 120, 127 (3d Cir. 2007) (citing *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 2006)).   Here, Defendant does not argue that Kaite's *prima facie* case for retaliation is insufficiently pled, but only contends that Kaite's Complaint fails to sufficiently allege pretext.

As discussed in the preceding sections, because Defendant and the Commonwealth's exempt employees whose fingerprints are not readable from the fingerprinting requirement of Section 2344, but do not exempt employees seeking religious accommodations, Section 2344, as applied, is discriminatory.   Given that Section 2344 violates Title VII, Defendant was relieved from having to comply with the statute.   By complying with a statute that is void with respect to employees seeking religious accommodations, Defendant discriminated against Kaite on the basis of her religious beliefs. Therefore, Kaite has plausibly alleged that an invidious discriminatory reason was more likely than not a motivating cause of Defendant's actions.

Additionally, because Kaite requested an accommodation from employer's fingerprinting requirement in or around November 2015, and Defendant decided to suspend her in December 2015, (Amd. Comp. ¶¶ 8-11), there is unusually suggestive proximity between the request for accommodation and the adverse employment action, which makes Kaite's pretext allegation plausible on its face. *see e.g. Jalil v. Avdel Corporation*, 873 F.2d 701, 709 (3d Cir. 1989). Thus, Kaite can establish Defendant was motivated by discriminatory reasons when it fired her and she has alleged sufficient facts to establish a retaliation claim.

### III. Conclusion

For all the above reasons, Defendant has failed to establish that no material issue of fact needs to be resolved and that it is entitled to judgment as a matter of law.  Accordingly, its renewed Motion should be denied.

Respectfully submitted,

**Samuel J. Cordes & Associates**

/S/ Nicholas A. Krakoff
Samuel J. Cordes
Nicholas A. Krakoff

Pa. I.D. No. 54874 (Cordes)
Pa. I.D. No. 318890 (Krakoff)

245 Fort Pitt Boulevard
Pittsburgh, PA 15222
(412) 281-7991

Attorneys for Plaintiff

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify on this 19th day of April, 2017, I served a copy of ***Plaintiff's Brief in Opposition to Defendant's Renewed Motion for Judgment on the Pleadings*** via electronic mail upon the following:

<div align="center">

Douglas C. Smith
Mariah H. McGrogan
Jackson Lewis
1001 Liberty Avenue, Suite 1000
Pittsburgh, PA 15222
<u>smithd@jacksonlewis.com</u>
<u>mariah.mcgrogan@jacksonlewis.com</u>

</div>

/S/ Nicholas A. Krakoff_____
Nicholas A. Krakoff